Mr. Blomberg, is that right? Yes, Your Honor. Great. I want to make sure that you can hear us here in the courtroom okay? Yes, Your Honor, I can. Thank you. Okay, great. We've had really good luck with our IT people doing arguments this way, but if you have any problem, don't be shy about letting us know. Thank you, Your Honor. Thank you. Counsel, we're ready to hear argument. May it please the Court, Daniel Blomberg for appellants. I'd like to reserve three minutes for rebuttal. Go right ahead. I was going to say, sorry, just keep track of your own time if you would. Yes, Your Honor, I will. And you can see the clock, right? I can, Your Honor. Thank you. Okay. Go right ahead. FCA clubs ask that those selected to lead their prayer, religious teaching, and worship agree with their faith. Solely for that reason, defendants permanently relegated FCA clubs to second-class status and commenced official targeting of the clubs. The record affords many ways to grant an injunction restoring FCA's equal access, and three paths are particularly straightforward. First, the defendant's ban on religious leadership is a content-based speech regulation that violates the Equal Access Act. Second, if the ban is pursuant to an all-comers policy, as defendants claim, then it is not generally applicable under Fulton and Tandon because the policy is, in fact, a some-comers policy that favors secular groups. Third, and finally, if the ban is actually rooted in a non-discrimination policy, then it still flunks Fulton and Tandon because the district permits a multitude of secular exemptions. Turning to the Equal Access Act first, the parties agree that the only question here is whether the district's ban on FCA's religious leadership is content-based, and it is. A law is content-based if it draws a distinction based on the message of the speech in question. That is, where the law requires you to ask what someone is saying in order to figure out whether the law applies, then it is content-based, and that's what we have here. The district's rule applies to FCA's speech because FCA has religious content in that speech, and you can see that in the text of the rule, in the exceptions to the rule, and the history of hostility behind the rule. Any one of those three is enough. All three makes it obvious here. Looking at the terms first, the term of the policy requires the court and the school to reference whether a leader is being selected based on religion, and the district's 30B6 witness testified that the heart of the problem here is that there is exclusion that is being based on, quote, religious beliefs. That's at 9 ER 1776 through 78. By itself, the text of the policy requires looking at the speech content of FCA, and so that triggers the EAA. You can also see it in the exceptions that the school permits. Under the Boyer case at 978 F3, 622 through 23, exceptions that are justified by reference to the content of the speech trigger the content neutrality standard. And here, the district has admitted that secular clubs can require agreement with their principles. Secular views on good moral character or being an unworthy citizen are permissible, but FCA can't ask for religious character or religious beliefs on sinful conduct because that's religious and it's forbidden under the policy. May I stop you there and ask you to, if you could, as to those characteristics, could you speak to Martinez? Yes, certainly, Your Honor. Yeah, so the Martinez case is helpful in a couple of ways, primarily because Martinez agrees that leadership is content. Who speaks on behalf of an organization colors what is said. But Martinez doesn't control the outcome here because Martinez is a First Amendment case regarding viewpoint discrimination, not an equal access case. Under the Equal Access Act, Congress has set the policy for how school districts that accept the spending clause legislation hook here, how they have to interact. And the way they have to interact is by granting equal access to the campus. It can't discriminate based on the content of the speech, not just the viewpoint, but the content of the speech. And also, in Martinez, you have a real all-comers policy, an all-comers policy that didn't even allow political groups to require agreement with their political beliefs. That's not the case you have in front of you here. Here, the policy is porous and allows all sorts of exceptions. It doesn't get anywhere close to what you had in Martinez. Can you give me the strongest example you have of an exception within the ASB program? Certainly, Your Honor. This depends on, too, how you look at the policy that's at issue. The district toggles between calling it an all-comers policy and a non-discrimination policy. It calls it an all-comers policy when it wants to avail itself of the Martinez standard, and it calls it a non-discrimination policy when it wants to distinguish all the many, many exceptions the policy actually permits. I think we understand that in Martinez there was a stipulated all-comers policy. Let's call it an anti-discrimination policy for purpose of my question anyway, please. Yes, certainly. And just because I don't want to use up too much of your time, but it would be helpful to me if I could hear what your strongest example is of an exception the district has allowed to the anti-discrimination policy within the confines of the ASB program. Well, the very first, so looking at the non-discrimination policy as a non-discrimination policy, the very first thing to note about it is that it applies to all district programs and activities. That's on the face of the policy. It's on the face of the form that each of these students must sign. It says neither the district nor any ASB-recognized club can discriminate based on any of these enumerated characteristics. But hold on, because that's the argument you make in your brief, which is helpful, but this is the intersection I'm not sure I understand about your argument, because I don't think you're challenging that the district is free to set up and design as it chooses a limited public forum. And they've adopted this anti-discrimination policy. It's two, but we're calling it one for purposes of this question. And it said that's the policy that's going to apply to this limited public forum. So I am challenged by your briefing that suggests that fair comparators are programs that are outside that limited public forum. Could you speak to that? Certainly you are. And I guess the important thing you need to do here, then, is look at the Tandon test. And Tandon tells you the first place the court has to look is the government's asserted interest supporting the policy in issue. And so what's the policy? And the policy is the non-discrimination policies that apply to the entire district. And that's very important, because Tandon, Fulton, Licumi, and the Carson case all say that you can't allow the government to gerrymander the limitations of where the policy applies and doesn't apply. And here the record is crystal clear. The policy we're talking about is a policy that applies to all district programs and activities. That's on the form. It's on the guidance. It's the 30B6 witness at 9 ER 1724. She says the prohibition against discrimination applies equally to the district and to the ASB. The district's superintendent, who was responsible for responding to this situation, said that the same non-discrimination policy that applies to student groups applies to all San Jose Unified programs and activities. It's at 8 ER 1361. And so that's important, Your Honor, to understand the scope of this court's analysis. The scope of this court's analysis needs to ask, what is the policy and what are the government's interests? The government's asserted interests here are to prevent invidious discrimination based on any forbidden criteria under the non-discrimination policy, such as race and sex. And the district has admitted the fact that it does not apply this policy to all district activities and programs. That's at their brief below at 17 through 19. It's also the brief before this court at page 50. They say that they have discretion to decide whether or not to apply the policy in certain situations. And that's the 30B6 witness testified to this. She said each site has, quote, discretion in tailoring a solution to the needs of their students, such as through the Latino Mentorship Program. That's at 9 ER 1655. Counsel, do you have any authority for the proposition that we would look to activities outside, when you're doing a forum analysis under either the Constitution or the Equal Access Act, that you would look at activities outside of the forum context? Do you have any authority that says that we should do that? Certainly, Your Honor. Both the Martinez case and the Alpha Delta case both looked at the non-discrimination policies outside the specific context of the forum. But what's very important here, Your Honor, is that your free exercise analysis is not forum analysis. That's not the standard that you apply here. No case has done that. In fact, the Supreme Court has expressed this as the opposite. So you have to look at the government's asserted interest and then compare that to the exception. Right. I thought your argument was focused on the speech claims and not the religion claims. So have we switched? No, Your Honor. Sorry. Just to clarify, on the issue of the comparators, what's relevant is our lead arguments here are the free exercise arguments. And that's where I understood Judge Christin would be bringing us to when we were looking at the comparators. We don't have to look at the comparators under the Equal Access Act. All you need to know under the Equal Access Act is whether there's a content-based limitation being placed on speech, and you can see that in the text of the policy. And you can see that in that they allow secular good character exemptions and not religious good character exemptions. So that's all you need. And, of course, the very, very clear evidence of religious targeting in this case also shows content discrimination. So none of the comparator analysis is necessary for purposes of the EAA. So under the comparator analysis, for purposes of the free exercise clause, requires you to look at the actual policy that's being applied and looking at it in its real application and not just in gerrymandered categories. That's where I was trying to get at, Your Honor. If I can ask you a question going back to comparator analysis under Tandon, I understand your argument the policy doesn't distinguish between various programs, but there does seem to be a practical difference between ASB clubs and, for example, school athletics. You know, there are other competing interests there, you know, Title IX, et cetera. So, I mean, is that a fair comparator to compare a club with a district athletic program? Certainly it is, Your Honor, because the district's interests in non-discrimination are the same. And so that's the question. What is the government's claimed interest? And the government's claimed interest is preventing discrimination based on sex, gender, religion, things like that. And they allow exceptions. Now, that doesn't mean that it's the end of the analysis. You know, the district and other governmental entities can show they have a strict scrutiny reason for distinguishing between different types of applications of the policy. They can do that. The district hasn't done that here, though, and that makes your analysis fairly straightforward. All you need to do is look at the text of the policy, the undisputed application of the policy, and look for exemptions. On the athletic examples, though, Your Honor, the evidence is also undisputed that each athletic team must be ASB-approved and must be organized under the umbrella of the ASB program. That's 2 SER 418. And then also the courts that have looked at this issue, like this court in the Truth case, have lumped in the athletic teams with the other types of clubs because they are organized and functioning under the ASB policy. So what's very odd here is that you have the district claiming a higher interest in regulating private free speech of students when it comes to selection of their religious leaders than they do when it comes to the administration of their own programs for the exact same interests. As the district admitted below, the interest that the district has is higher when it comes to its own programs and avoiding looking like it's discriminating. And yet it's applying a higher standard to FCA in this context. Counsel, let me get a word in edgewise here. Because you're arguing your whole case, and I'm really distracted by that. We have a very thin slice of it. I think this case presents very compelling and important issues, so I'm not minimizing that in any way. But I am looking at the clock and trying to make sure that we focus on what's in front of us, right? And what's in front of us is whether or not the district court erred in denying this motion for preliminary injunction. So this seeks prospective injunctive relief, right? Because your client is basing clients, right, are arguing that they are in danger, they are at risk of imminent injury if they're not recognized as an ASB program this fall, right? So we're looking at that, which is a much narrower slice of the pie here. Could you start by explaining? You have to have standing at every step of the way, and Judge Koh didn't think you had it. You've amended your complaint, and can you speak now to why your clients have standing to pursue prospective injunctive relief mandating recognition of the clubs this fall? Certainly, Your Honor. This case is on all fours with the truth case in that respect. You have the existence of a written policy that says this religious group is ineligible for recognition. You have examples of past denial, and that, under the truth case, is enough for standing for preliminary injunction. The 14-union case also talks about that as well. Hold on. You're seeking organizational standing, yes? Yes, Your Honor. Okay. There's direct organizational standing, and then there's representational. Are you seeking both? We have both, yes, Your Honor. Okay. So could you just slow down a little bit and break them down for me and explain to me what your best case is? Because I don't think you have a student for representational standing who has been identified, who's ready to apply. Am I wrong about that? That is incorrect, Your Honor. Okay. So help me out with that, please. Yes, Your Honor. So the record in front of this Court is that Pioneer FCA will apply. That's at 4 ER 649. That Pioneer FCA has several student leaders for next year. That's 2 ER 55. It was met several times last year. The district's officials came and watched them meet this past May. Hold on. Again, I have a really specific question. I think the record sites that you're talking about are all from Mr. Lopez's three declarations. Am I right? No, Your Honor. The first one I gave you is from the complaint. Okay. But you have to back it up. And I think that what I've got are the three declarations from Mr. Lopez. Is that right? And he was deposed as well. And I can't find, let me just cut to the chase, I can't find in his declarations where he's identified specific students who remain leaders and who are of the club and who are, you know, poised to apply. Your Honor, he specifically testifies about NM and BC who are minor students that are seniors that have been selected by the club as leaders for the club for this coming year. He did. He did. He did. And can you tell me where he says they have expressed an interest in applying? That's what I really need. Your Honor, I'll double check on that and I'll have that for you on rebuttal. We do have that in the record. And I'll get that in front of you. I point out, though, Your Honor, in the truth case, that wasn't necessary. In the truth case, there was the unincorporated student association and two students who had graduated. And all this court required for purposes of finding that it was standing was that the two students who had graduated identified a third student. They indicated that third student was going to apply. And that was sufficient for purposes of standing. And that's what I'm looking for. That's what I'm looking for. And I don't mean to be, since you're going to come back and reply for this, this is not a shell game. There was one student identified for the previous year who's a freshman. I have her initials, M.H., right, who's a freshman. And she had indicated an intent to apply. There's a follow-up on that. And then the two that you mentioned who are, I think, the newly chosen leaders of the group. But what I'm looking for is their intent to apply. Relatedly, Mr. Lopez thought so. He suggests that, I think, in his deposition. He testified to it. He testified to it. And he testified, sir, that when he thought that they hadn't applied, I think M.H. hadn't applied because of intimidation. And I want to give you a chance to respond to that, because in his deposition he indicated that that was coming from him and not from the student, the concern about intimidation. So when you have a chance to look at your notes, if you could come back with the best response, that would be helpful to me. Thank you, Your Honor. And to clarify, Mr. Lopez's declaration on NM and BC is at 2 ER 55. I'll get that other answer for you as well. If there's no other, I've got those, so that's helpful. All right. Thank you. Can you briefly address your facial challenge? I understand your selective enforcement argument, but with respect to a facial challenge in light of Christian Legal Society versus Martinez, does that bar your facial challenge? No, Your Honor. The Christian Legal Society versus Martinez doesn't apply here because you don't have an all-comers policy in front of you. I think Judge Christen's questions kind of indicate that, that what we really have here is a nondiscrimination policy, and that's very, very different from what the court was looking at in Martinez. Well, to follow up on that, was our district court bound by truth, our opinion in truth? Yes, Your Honor, the district court was. And truth is very distinct because truth only dealt with membership, and this case only deals with leadership. Truth specifically distinguished the leadership issue and distinguished the Second Circuit's decision in the Sioux case saying that leadership presents a different issue. We're not addressing that. And the Sioux case expressly says it does present a different issue. In fact, it's a dispositive issue because, and this is what Martinez court affirmed, who speaks on behalf of their organization controls what is said. With that, Your Honor, I'd like the results. Go ahead, Your Honor. And I think that the Sioux, I'm not sure how to pronounce it, H-S-U? I'm not either. I'm doing my best. That makes two of us. Just when you come back, my problem with that case, of course, is it's out of circuit and it predated Martinez, so maybe you can speak to that. But let me just make sure Judge Forrest has no other questions before we flip over. No. No? No? Okay. Then in that case, we're ready to hear from opposing counsel. And we took a lot of your time, counsel. I'll put another minute on the clock when you come back. Thank you, Your Honor. I'd like to begin by making a few affirmative points and then turn to some of the points that Mr. Blomberg made in his answers to Your Honor's questions. The question today is whether the San Jose Unified School District will be required to What if we don't agree that the policy is the same? There was a stipulation, as you know, in Martinez. And we don't have that here. And the stipulation is reflected in Note 2. In all respects, in Note 2 of Martinez, the stipulated policy in Martinez was the same as here. It allowed for neutral, generally applicable criteria to be applied to club membership and leadership, but did not allow for discriminatory criteria. Even if that were not the case, however, Truth and Alpha Delta specifically addressed non-discrimination policies and upheld them. And this Court would be bound by those decisions as well. Those decisions stand for the principles that when the district or school establishes a limited public forum or an open public forum under the Equal Access Act, the state may reserve that forum for specific groups so long as it complies with constitutional requirements and that the constitutional challenges to those policies are analyzed through the lens of the limited public forum doctrine. In this case, as in Martinez, Alpha Delta, and Truth, the district is withholding a benefit. It is not imposing a direct restriction. And in Martinez, the court put it, the district is dangling the carrot of subsidy, not wielding the stick of prohibition. Those courts also held that it was reasonable for schools and for districts to serve the purposes of non-discrimination, tolerance, and inclusion to prevent groups from discriminating or from excluding students from membership or leadership. And those courts all held that these types of rules are rules about conduct. They are not about speech. In Martinez, the Supreme Court said, and I'm quoting, Christian legal society is simply confusing its own viewpoint-based objections to non-discrimination laws, which it is entitled to have and to voice with viewpoint discrimination. The Fellowship of Christian Athletes Club can have any views that it wants about religious issues or about LGBTQ students or their parents or anything else. But if it wants to participate in the open public forum or the limited public forum that the San Jose School District has established, it must not exclude students from leadership or from membership on that basis. Wait a minute. Could I ask a follow-up question? Yes. I think your position, but I want to be sure, is that they couldn't categorically exclude, so they'd have to sign a form. A student leader would have to sign a form abiding by the non-discrimination policy to allow any student to join the club. But they would be free to decide not to vote for that student for a leadership position, wouldn't they? Yes, Your Honor. The record is clear on that point. Okay. So if they had a member of a club, and I think their position is that all comers are able to join the club, just not apply for a leadership position or not hold a leadership position, you don't think it would be a violation for students within the club to decide, we're not electing this person because this person doesn't espouse our views. Is that right? That's correct, Your Honor. And the district's 30B6 witness and the district's assistant superintendent and principal all testified that students could consider the views of leaders just as students normally do when they're voting to elect the leaders of the club. So the Fellowship of Christian Athletes, if there were students who decided to form a club at Pioneer and to apply for ASB recognition and they were to sign the affirmation, they could ask candidates for leadership. What are your views on LGBTQ issues? What are your views on this aspect of the Bible? And they would be free to consider that when they're voting for the leadership positions. Counsel, your argument is based on the premise that this policy is generally applicable to all clubs. And I'm struggling with how I accept that characterization when the record tells me that the school didn't actually enforce the policy unless somebody complained. Your Honor, I'd like to answer that in two ways. First, I'd like to point out that they are seeking a preliminary injunction here. So what is relevant is the school's current policy, which is not a complaint-driven policy. The school's current policy, which is reflected in the record, is that students who want to form a club and have it ASB recognized must sign an affirmation stating that they will not discriminate and they will admit all students to membership and to leadership regardless of belief or status. This is an important point. So could you slow down a little because this is an important point. I think what you're saying in response, but I don't want to put words in your mouth, is that if we agree or if we read the record to be that this wasn't enforced until this new form came along requiring all clubs to affirm compliance, then it sounds like what you're saying is that this may be evidence that there's a prior violation but not grounds for prospective injunctive relief requiring recognition of the club. Do I understand your position right on this? That is correct, Your Honor. The district has had this policy of requiring an affirmation in place since February of 2021. It was not all student groups returned the form. That was when students were still remote and it was COVID. And so beginning in the summer of 2021, they required this for all student groups that want ASB recognition. And there's no dispute, and the district court made a finding, that every group that sought ASB recognition was required to sign this form  I would also say that the Storman's case stands for the principle that even if it were a complaint-driven policy, that that is acceptable under the free exercise clause. And so I don't think that the fact that it is a complaint-driven policy would be enough to invalidate it. But the important point is that going forward, it is a uniformly applied policy. So why does the four purposes of prospective injunctive relief, I mean, that is the only thing on the table before this panel. Exactly, Your Honor. And so it's a compelling case, and I think there's a temptation to argue the whole enchilada, but we're not doing that today. Correct, Your Honor. And the students still have a damages claim in this case. So as far as looking backward, they will still be able to pursue relief for any. I've interrupted Judge Forrest and I want her to get back to her questions. Why does the schools form Trump? So in the past, we know that different clubs have gotten recognition when their own constitution or whatever you want to call it, their formation document, indicated discriminatory criteria for membership and leadership. And yet they were recognized. Nobody complained. They operated fine. Now the school has changed practice and we have this form that everybody has to sign saying, I won't discriminate. But what is not clear from the record is that clubs are going to have to change their constitution or bylaws or formation document to be consistent with that non-discrimination policy. So it seems to be that the school's position is, I have this form, you sign the form, the form trumps everything else. Your Honor, I'd like to answer that in three ways. First, I would like to say this is not a change in practice. The district court made a factual finding that the district's all commerce policy and what it was implementing in 2021 was a formalization of a longstanding practice of the school district. And that finding was not clear error. It is well supported by the effort. Is it fair to say that it was an intended practice and they didn't recognize the fellowship's statement of faith or purity statement until it was brought to their attention? Or are you saying that they complied with it? That is correct, Your Honor. That wasn't either or. The first, the first is correct. They intended to apply it. The district's understanding of the policy all along was that student clubs that were ASB approved had to admit all students to membership and leadership. The Fellowship of Christian Athletes violation of that policy was called to the school's attention in 2019. I mean, I got to say that's hard to swallow when when the school all along had required clubs to present their formation document. There were clubs that had formation documents with discriminatory terms in them. And yet they were they were recognized and nobody complained about them. And so it never was a problem. So how how can that be? That's the district court's intent. The school district's intent was to make sure that nondiscrimination happened and everybody was welcome all along. But they didn't actually do anything to make sure that that was happening. Your Honor, that precise situation is actually addressed in the Alpha Delta case where the court acknowledges that there were constitutions in the record that were in violation of the San Diego State nondiscrimination policy. And the court says that there would need to be further factual development because those could be inadvertent errors or it could be that the clubs were actually complying with the policy despite what they said in their constitution or they could be the type of discrimination that is constitutionally prohibited. So even if the district had approved organizations that had a discriminatory statement in their constitution and the absence of any evidence that that was reviewed and approved of by the district, that does not show unconstitutional discrimination. But this is a preliminary injunction. There is no dispute now that all clubs have to submit not only a signed affirmation, but also that they have a form constitution that they all must sign. That constitution says that all students must be admitted to membership and to leadership regardless of status or belief. And so going forward, there is no dispute, and going backwards even to this prior school year, there is no dispute that the district is uniformly applying this policy. The plaintiffs attempt to confuse as to prior groups that did discriminate. For example, by throwing around the names of Girls Who Code, when in fact the record shows that Girls Who Code was founded by a boy and a girl and the boy was the co-president of the group the first year. Many other organizations, the Black Student Union, always had white members. There is actually not evidence in the record that any clubs that were ASB approved actually discriminated based on a protected category. And so that is actually not supported. But even if it had been, the district's attention was called to the issue when it was made aware that the Fellowship of Christian Athletes Club was violating the policy, and the district took actions at that point to make sure that the policy was consistently applied, which culminated in its adoption of this approach in the spring of 2021. But does the record show that, for example, the South Asian Club says we prefer members who are South Asian, and the Big Sister, Little Sisters also says it's intended for students who identify as female? Yes, Your Honor. The record shows that the South Asian Heritage Club specifically said that there was no cap on members and that they admitted non-South Asians to membership. They said they would prioritize South Asians, but that would, given that they also signed the affirmation, that's most logically read to mean that they're prioritizing South Asians in terms of who they target for recruitment, which purposes that they're serving. Doesn't that, as a practical matter, basically give a free pass if you're not really truthfully being truthful or honest, that you just signed this form? It seems like as a practical matter, for example, Big Sisters, Little Sisters, it's intended for female students as mentorship and support, and there may be a good reason to do that. It really doesn't make sense to have boys saying, I'm going to mentor a female student. It seems like really the purpose of it is there is a discriminatory criteria, and again, maybe for a very good reason. But, I mean, it seems like we're being blind to the reality here when we say, well, Big Sisters, Little Sisters, you know, for example, doesn't have a discriminatory criteria. Well, Your Honor, one might think the same about the Black Student Union or Girls Who Code, but the record shows that they did have white members of the Black Student Union and that they had boys who were members and leaders of the Girls Who Code. In terms of Big Sisters, Little Sisters, the record at 2 S.E.R. 417 shows that the activities director at Pioneer reviewed their applications and that that group never discriminated based on gender. And there are also record sites at 5 E.R. 852 and 53 and 9 E.R. 1672 and 73, showing that they would not be allowed to exclude members. Is there anything in the record showing that the F.C.A. has discriminated against anyone? The F.C.A. has said that it cannot sign the affirmation requirement. Which then comes to my question. It seems like we're relying on formality. If someone's student is just willing to sign it and then it's OK. So, I mean, suppose then a group of students say we're going to form a white nationalist group to celebrate contribution of European-Americans, but they say anybody's welcome to join. I mean, would that group be discriminatory under the school's policy? That group would not be violating the district's policy of allowing all students to be members or leaders. The district does reserve the right to investigate. I mean, the district has actually- Well, that to me seems, you know, shocking, something like that. Then is this really truly a nondiscriminatory policy when a group, a white nationalist group is allowed under this policy? Your Honor, the district has made clear that the fellowship of Christian athletes will be approved if it signs the affirmation. Now, if a white nationalist group or another group were to sign the affirmation and then a student came and said they signed this affirmation, but they didn't let me run for office because I'm black, then the district would, of course, be able to investigate whether a student- whether a student organization that was ASB approved had violated both the district's policy and its own agreement to adhere to that policy. The district may disapprove of the groups, of the beliefs of numerous student groups, but it doesn't matter what the district's views are on a white supremacist group's views or the Satanic Club's views or the Pioneers for Christ's views. All of those groups are allowed to participate in a limited public forum as long as they do not discriminate based on membership or leadership. Could you address standing? Opposing counsel says that our truth case answers the standing question. Your Honor, the standing issue in truth was not whether there were students who wanted to apply for the upcoming year. That was not disputed in standing. They had identified a specific student who wanted to apply for the fourth time because the district there had denied applications three times. And so the issue there was whether the district did challenge the plaintiff's standing, but the challenge there was because the district said, we don't know what action will be taken on the application, and so we don't know whether they will again be injured. And the Ninth Circuit, this Court, rightfully said, you've denied it three times, you're saying you'll be compelled to deny it, you're going to deny it again. That is not the issue that we are raising here. We are raising here that the plaintiffs have not identified a specific student who will apply for recognition this fall. We know that no students applied this past year. The plaintiffs say that's because they couldn't sign the affirmation. The only evidence of that is in the declaration of a Fellowship of Christian Athletes staff member who was speculating about students' views. That's Mr. Lopez. Mr. Lopez, yes, Your Honor, who has filed seven or eight declarations in this case, but has not been able to file a declaration saying that a specific student would apply for ASB recognition. In the reply brief, the plaintiffs have, I think, seven citations that they say supports that a specific student will apply this upcoming year. Four of those citations are to their complaint. Three of those citations are to two declarations by Mr. Lopez. There's a duplicate citation. Those statements by Mr. Lopez are general statements, general statements that say the FCA leadership will apply if the policy is invalidated. He does not identify a specific student. But in one of the declarations, doesn't he identify NM as part of the student leadership? Yes, Your Honor, but he does not. There is no declaration saying that NM actually wants to seek ASB recognition. But in another declaration, they say the student leadership will apply for ASB declarations. And I guess if you read it together, I think the fair inference is that that student will seek recognition. It maybe would have been clearer if he, you know, spelled it out in, you know, every little step, but it seems pretty clear that that's what he's saying. Well, you could. So let's break it down again. This is important. It's a jurisdictional requirement. Last. We have three declarations. You mentioned six or seven, so that's my first concern. I think I have three. I believe there are only three that were cited in the briefing. Mr. Lopez had submitted others. He filed a declaration at the start, it's September of last term, and he indicated he identified a student that we've just mentioned, NMH. And as Judge Lee mentioned, he said she intended to apply. I'm sorry, I didn't hear the rest. He said that declaration says that the leadership intends to apply. My concern about injunctive relief is that this status expires every year, so we're now talking about a new year, and I think it's uncontested that there has to be a new application. And in the most recent declaration filed in May in front of the district court, the NMH student doesn't appear as a leader. Two other students are identified as leaders, and what I'm trying to see is whether we have anything in the record that indicates that those two, either of those two, have indicated an intent to apply for ASB recognition. No, Your Honor. There is nothing in the record that supports that. There is concern, forgive me for interrupting, there is concern that the students have been intimidated, and Mr. Lopez raised that as well. Could you speak to that? Yes, Your Honor. Again, the problem with the supposed evidentiary support for the idea that the students have been intimidated is similar to the problem with standing, that even if you were to put together Mr. Lopez's declarations and draw inferences, even though they were different in time, and MH, who was the leader identified at the time of the earlier declarations, has now disappeared from membership. Even if you were to put all of those together, it is Mr. Lopez speculating about the views of students, about the intent of students, about what is driving students. And, in fact, in his deposition testimony, Mr. Lopez acknowledged that he was the one who raised the prior intimidation, the prior harassment, the affirmation form with MH, that MH had not affirmatively raised that concern. So this is a case that is driven by a national organization, the Fellowship of Christian Athletes and its staff member, who are seeking to stand in the shoes of students when it is the students who are the ones who have the right to access that limited public forum or open public forum. So Mr. Lopez's declarations and his speculation about students' intent cannot be credited, and even if they were, he hasn't identified a specific student who will apply this fall if an injunction is issued. Again, I don't want to belabor the point, and then I'll get out of your way. But to be specific, I'm looking at SCR 79, and there are follow-up questions in Mr. Lopez's deposition about his expressed concern that students have been intimidated, which, of course, we take very seriously. And I think you're relying on this testimony, but you haven't said as much. If there's something else in the record, of course, I'd want to look at it. But this is in response to a question about the genesis of that concern about the student that the students had raised about being intimidated. He says that it was concern probably from what I can recall coming more from me. That was the genesis of my question. Is there more in the record on this point? No, Your Honor, there is not more in the record. And, in fact, after the supposed intimidation and harassment all occurred back in 2019. So the students who were in school at that time, there are no longer any students unless they were held back a year who are even still in the school. After that supposed intimidation and harassment, FCA did apply for status the next year. It was granted provisional status, as all clubs were during the COVID closure year. And so the supposed harassment and intimidation did not deter students from applying those years. It applied the previous year? I thought there was a blanket grant of provisional status for all the preexisting clubs. Is that wrong? The Fellowship of Christian Athletes was initially derecognized in the spring of 2019. In 2019-2020, the club applied and was denied status, but they continued to meet on campus. They continued to hold events that had up to 100 participants. They continued to hold regular meetings that had between 10 and 30 participants. I'm asking a different question, counsel. I'm asking about the fall, I think it's 20 to 21. Correct me if I'm wrong, where provisional status was granted to all the clubs. And my question, I think, wasn't very clear, but what I'm wanting to ask is did they apply for that? I thought it was a blanket bestowing of ASB status to all the clubs, but I want to make sure I have that right. I am not actually sure if there was any application process. It was certainly not the formal application process that the district has instituted for this prior year. I believe that I am over time, but I would like just to – I want to make sure I understand your argument on standing and the evidence that we have of record. Is your argument that Mr. Lopez didn't say enough about the students, or is your argument that Mr. Lopez, no matter what he says about the students, it's not good enough because he's not the students and he's surmising about what they think and what they will and won't do? Your Honor, my argument is both. He did not offer specific evidence that there is an actual student who wants to apply for recognition. After this case has been pending for this long, it is extremely suspicious that he is not able to identify a student who wants to apply. But even if Mr. Lopez had done that, that would not be enough because Mr. Lopez cannot say what another person is going to do. He cannot opine about what is in someone else's head. We need a sworn declaration for that purpose. And I would also submit that the same standing problems also establish that even if this Court were not convinced on standing, that the Fellowship of Christian Athletes cannot possibly establish irreparable injury. And the injury for both standing purposes and for NRDC v. Winters purposes needs to be an injury caused by the policy. You're not questioning that a First Amendment violation would be an injury. What you're really talking about is causation. Exactly. Exactly, Your Honor. The policy cannot be causing an injury if there is no student who intends to apply. And the Fellowship of Christian Athletes and the plaintiffs had the burden to establish that there is a student who intends to apply so that the policy would be causing injury or that a student would apply, as the Teamsters case makes clear, if it were not for the affirmation requirement. But the plaintiffs have not established that for those two different reasons. The declarations of Mr. Lopez are not reliable, competent, cognizable evidence. This isn't a technical evidentiary objection. This is a fundamental problem with Mr. Lopez's testimony, which has often been an error. And second, even if that were not the case, Mr. Lopez does not identify a specific student who intends to apply for recognition this upcoming year. So one thing I don't understand about that is that the District Court, in making its decision, just recites that FCA has student leaders ready to go for 2022 this year. Just recites that. And you haven't challenged that statement or finding to us that I'm aware of. You've challenged Mr. Lopez's statement in his declaration that basically says the same thing. But the District Court just said that, and I think said that based on the representation of counsel at the preliminary injunction hearing, without objection from your side, as far as I can tell. So how is that not in the record before us? Your Honor, the only evidence in the record as to 2022 that the District Court was likely referring to are the declarations identifying three specific members and leaders. Those declarations don't say anything about an intent to apply for ASB recognition. The briefing in this case, and the reason that I think it's likely that the District Court did not focus on the standing issue, is that the briefing in this case all actually occurred originally before the deadline to apply for ASB recognition. At that time, there were declarations in the record suggesting that students did intend to apply. You're not really going to judge for us, and it just seems to me a really helpful question. Was there an objection? Do we have to find that the District Court's statement was clearly erroneous, as a matter of fact, about whether students were ready and able to apply? I don't have the factual finding in front of me. If the District Court said that there were students who did intend to apply, then that would be a clearly erroneous factual finding. To be fair, I don't think that the District Court said that. I think the District Court said, FCA has student leaders for 2022. This club is still operating. They still have leaders. And then based on the history and other statements that Mr. Lopez made about, of course this club wants recognition. And their history shows that, that they always had recognition until they were derecognized. And then they applied after that, and they were denied. And why keep doing that, right? I mean, you recognize the futility standard that this court has acknowledged. Why are we going to keep demanding that they apply year after year when the policy of the school has not changed? You're not going to get recognition for all the reasons you didn't get it before. Your Honor, we are not demanding that they apply again. We are insisting that standing requires that they show a student who does intend to apply. There are many student groups... Hold on, hold on. And is that because, for purposes of organizational, direct organizational standing, there's an imminence problem? Your Honor, for both associational standing and organizational standing, for standing for prospective relief, the plaintiffs have to show that they will be injured by the policy. Counsel, is the answer to my question yes? Yes. My question is different. I really need to, right? I'm asking whether the problem with standing is imminent when we talk about the direct, the organizational direct... Because it has made, and I don't see you responding, really, or refuting its argument that this will require it and has required it to divert resources. That's frustrating its mission. And so I want to be very clear about what your argument is here. Your Honor, below, there is a motion to dismiss that is pending that challenges those diversion of resources, but the answer to your question is yes. There is no imminent injury that requires the organization to divert resources because of the policy requiring students to affirm compliance with the policy. The motion below, again, this is... We keep conflating. The motion below is a motion to dismiss part of the case. We're talking about prospective injunctive relief. That's very different. So that's why it seems to me, but I'm trying to figure out if I'm right about this, that your argument when it comes to direct organizational standing is really a lack of imminence unless we know whether a student is going to apply. And for that line of authority, I'm looking at Lujan and many, many environmental cases where there are declarations and they're found lacking. If somebody isn't using the woods enough or has specific enough plans to paddle a particular river, you know, that's my summary. But that's the point I think you're going to, and I don't hear you saying it. If I've got this wrong, I need to know. No, Your Honor, you have this right, and I apologize if I'm being confusing. There is no imminent injury that the Fellowship of Christian Athletes could be suffering because they have made no showing that they must imminently devote resources because of the policy requiring students to sign an affirmation. If no students are interested in applying for group status, then the Fellowship of Christian Athletes does not have to divert any resources, and there's no evidence in the record that they are presently diverting resources in response to this policy as it will be applied this upcoming fall. What about a parent? Has a parent come forward indicating that a parent would apply? No, there are no declarations from parents in the record, Your Honor. So in sum, this case, if this Court were to reach the merits, is controlled by Martinez, Alpha Delta, and Truth on the Free Exercise Equal Access Act and First Amendment speech and associational claims. This Court is bound by those decisions, and there are not relevant differences between those cases and the facts here, but the Court should not reach that issue because there is no imminent injury that any organization or any student will be facing in the absence of a showing that someone intends to apply this upcoming fall. Thank you. We've taken you way over your time. Your argument's very helpful, and I appreciate your patience with my questions. Thank you, Your Honor. Could you please put four minutes on the clock for Mr. Blomberg? Counsel, I think you were down to two minutes, but we're going to double that given our verbose questions. Thank you, Your Honor. So just to start off with, you just heard the district admit that white nationalist groups are in and permissible, and SCA is out and not permissible. The only reason is because SCA asks its leaders to agree with its faith. That's it. That's the only reason. To your question, Judge Christin, the Sue case is directly applicable, very helpful, because it makes the very common-sense finding that if you forbid a religious group from having religious leaders, you have affected the message of that group, and that decision has only gotten stronger since that time. Cases like Hosanna Tabor and Our Lady have confirmed the principle. In Martinez, the court referenced members and leadership rules and said they're both neutral. Your Honor, if you have an all-comers policy, which is not what we have here. We have a policy against white nationalism. I don't understand how you're distinguishing the policy here and the policy in Martinez. What is the material difference? Certainly, Your Honor. This policy has written into it on its face a non-discriminatory criteria exception that allows any sort of discrimination as long as it's not one of the enumerated criteria in the policy. Where is that in the policy? Your Honor, that is on the face of the policy itself. So, if you look at the 4ER703, that's the guidelines that set out, lay out that standard. Also, the ASB application policy is at 6ER1048 that says there is a non-discriminatory eligibility rule that applies. And the testimony from the 30B6 witness here is that determining whether something is or is not discriminatory is left to the judgment of local officials who must use their common sense. That's at 9ER1739-41. That's the antithesis of the policy in Martinez. In fact, Martinez says not only could they not do that in the student groups, they couldn't do it in the classes. We have something very, very different at issue here. And that's why courts like the Blank Court in the 8th Circuit, the Inter-Varsity Court in the 8th Circuit, found Martinez unhelpful for resolving situations like this one, which are some cumbersome policy, not all cumbersome policy. Your Honor, this is also, the district just admitted that this is not a new policy. That cuts against them. Principal Espiritu, the same individual who derecognized FCA, testified that Big Sisters, Little Sisters was approved because it was a mentorship program for females specifically. And that's still true today. Under 2 SCR417, the district has admitted that recipients of the services of the Big Sisters, Little Sisters Club can still just be girls. And, of course, the service is mentorship. The same thing they allowed before, they're still allowing now for a group that wants to apply as a Big Sisters, Little Sisters group. And, of course, they do the same thing for their own program called the Latino Male Mentorship Program. Your Honor, the policy is complaint-driven, and you see that on stakes because right in front of you, you have the Senior Women Club. There's nothing wrong with the Senior Women Club. There's fine, but once you've allowed a Senior Women Club to write on the face of their application form that they will not allow any individuals to participate in membership or leadership based on whether they identify as a female, you've triggered the strict scrutiny analysis under the Tandon and Fulton cases. Excuse me for interrupting. Does the record show that that's true of the Senior Women's Club? Yes, Your Honor. The only evidence that we have in this preliminary injunction record is that the Senior Women Club is tradition at the school, and they wrote in that they did not allow any individuals to be leaders who are not identifying as females. But wait a minute. Again, prospectively, my understanding is that all of the groups have to sign the form indicating that they'll apply by the district's anti-discrimination policy and that all of the clubs in the ASB did except for the fellowship. Do I have that wrong? Yes, Your Honor. That is incorrect. The Senior Women Club, they did sign the form, but they wrote on the form in their handwriting exactly what I just quoted to you. And this goes to Judge Lee's question that we have a policy that is allowing unpopular groups to be kicked out and popular groups to be ignored, right? And so that's exactly the problem that we have right here. Is the Senior Women's Club within the ASB organization? It is, Your Honor. It's within the ASB program. It is, Your Honor. So you're telling me that they wrote on the form something that contradicts the form. That's correct, Your Honor. And the district... Could you give me the citation for that? Yes, Your Honor. I'd be happy to. One second. The Senior Women Club wrote it at 2 ER 163 through 64. And, Your Honor, if the district wanted to show that that wasn't the case, they could have investigated. But they didn't investigate it because their testimony before this court is that unless there is a complaint, they do not investigate. And so a group that is popular can write on the face of the form, we discriminate on the basis of sex, we discriminate on the basis of gender identity, and the district won't investigate unless someone actually complains and goes after them. That's at 5 ER 863, 7 ER 1165, 9 ER 1593. Do you want to speak to standing? I asked you standing questions, and then we got responses from opposing counsel regarding, I think you called our attention to the truth case. That's correct, Your Honor. And the truth case, we are on all fours of the truth case. You had an unincorporated association before you then, you have an unincorporated association before you now, and you had two students that had graduated before you then, you have two students that graduated before you now. You also have the national organization, which the district has never before this court challenged the national organization's organizational standing. They're making their arguments about diversion of resources for the very first time. They've not made those arguments before. They do make them in the district court. The district court didn't find them worthy of its time. But if you want to look at the record, Your Honor, the party before you that is going to apply is Pioneer FCA. The record says in the third amended complaint at 4 ER 649 that they will apply and that sufficient evidence on preliminary injunction. At 2 ER 56, you also have the specific students that are leading the group that will be applying. That's NM and BC for the 2022-23 school year. The district's arguments to the contrary, they don't make any sense. So, Your Honor, Judge Kristen, you pointed to the section, Mr. Lopez's testimony regarding the situation with MH. MH was frightened away by the district, required someone in her to the principal's office so that she could participate in Club Rush, not something they imposed on anyone else. You represented that, but that's what I'm really looking to. I understand the motions run high, but I'm really looking at the factual record here. Yes, Your Honor. And that's not what Mr. Lopez said in his deposition, as you know. We just reviewed that. Can you tell me where do we have your brief argues that she was intimidated, but where do we have that? Yes, Your Honor. That's at 4ER648 and 3ER421. Okay. 4ER648 and 3ER what? 421, Your Honor. 421? Yes, Your Honor. Thank you. Yes, and the section that you were talking about earlier in the deposition, he was not talking about whether MH had expressed intimidation as a result of that communication. He was talking about who brought up the issue with the ASB application form, that on the face of the form, it prevented the club from being able to apply. And it's not surprising that a freshman girl who had never done this before needed some assistance in thinking this one through. But that conversation had nothing to do with whether she was intimidated. The record, both from Mr. Lopez and from Ms. Clark, which is also in the record, shows that MH expressed intimidation and left for that reason. But regardless, But MH is not a leader for the 22-23 school year, right? She's not been identified? That's correct, Your Honor. That's correct, Your Honor. I'm just correcting the record on that point. NM and BC are the students that are the elected leaders for the 22-23 school year. Thank you. You're over your time. Could you please wrap up? Certainly, Your Honor. I just think the last point that I think I'd like to make is on the issue of voting. That just shows, one, it's not true. If you look at 9ER1761-62, the 30B6 witness testified that we'd be right back under the exact same non-discrimination policy that was used to drive up FCA in the first place. It also undermines the government's interest here. If you can vote in white nationalists, why is it that an FCA club can't ask its leaders to agree with the state? The Sue case directly addressed that. It said the school can't have it both ways. You can't say you have a compelling interest in driving up FCA and then allowing students to vote based on racial policies. Your Honor, it goes directly against what the EAA stands for. Again, Sue addresses this at 85 F3 861, where it talks about the reason why we have an EAA is because we had problems with school districts intimidating the children that were under their control. For those reasons, we asked for a preliminary injunction, and we asked for a ruling on the injunction pending appeal. By August 15th, the students have time to apply for this coming school year. Thank you. Is there anything further, Judge? No. Thank you both for your arguments. They're very helpful. We'll take this case under advisement, and that's the last case on our calendar for today, I believe. Yes. So we'll stand in recess. All rise. Hear ye, hear ye. All persons having had business with the Honorable United States Court of Appeals for the Ninth Circuit will now depart. This court for this session now stands adjourned.
judges: CHRISTEN, LEE, FORREST